KELLY, TROTTER & FRANZEN
John C. Kelly (SBN 125609)
111 West Ocean Boulevard, 14th Floor
Post Office Box 22636
Long Beach, California 90801-5636
Telephone No. (562) 432-5855 / Facsimile No. (562) 432-8785
jckelly@kellytrotter.com

POWERS PYLES SUTTER & VERVILLE PC
Matthew Sidney Freedus (DC 475887)*
Rosie Dawn Griffin (DC 1035462)*
1250 Connecticut Ave NW, Eighth Floor
Washington, DC 20036
Telephone No. (202) 872-6739 / Facsimile (202) 785-1756
Matthew.Freedus@PowersLaw.com; rosie.griffin@powerslaw.com

*Admitted *pro hac vice*

*Attorneys for Defendants, EISNER PEDIATRIC & FAMILY MEDICAL CENTER, IAN TILLEY, M.D., PENELOPE VELASCO, M.D., LILLIAN MORRIS, M.D. AND NATHANA LURVEY, M.D*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| L.J.C., by and through his parent and Guardian ad Litem, FREDDIE L. CROMER, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> DIGNITY HEALTH d/b/a CALIFORNIA HOSPITAL MEDICAL CENTER, et al., <br><br> Defendants. | CASE NO.: 2:24-cv-04731-WLH-SK <br><br> **EISNER DEFENDANTS' MOTION TO STAY REMAND ORDER PENDING APPEAL PURSUANT TO FED. R. APP. P. 8; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Hearing Date: June 6, 2025 <br> Hearing Time: 1:30 p.m. <br> Courtroom: 9B <br> Honorable Wesley L. Hsu <br> United States District Judge |

i

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................. 1

STATUTORY, FACTUAL, AND PROCEDURAL BACKGROUND ................... 1

LEGAL STANDARD ........................................................................... 2

ARGUMENTS .................................................................................. 2

    I.     The Eisner Defendants Are Likely To Succeed On Appeal ................ 2

        A. Section 233(a) is not a waiver of sovereign immunity ................... 3

        B. Section 233(g) neither alters nor restricts § 233(a) immunity ........ 4

        C. The Eisner Defendants acted within the scope of their deemed
        federal employment.............................................................. 6

    II.    The Eisner Defendants Will Be Irreparably Harmed Absent A Stay ... 3

    III.   Neither Plaintiffs Nor The United States Will Be Substantially Harmed
        By A Stay ......................................................................... 9

    IV.   The Public Interest Favors A Stay ..................................... 10

CONCLUSION................................................................................ 7

CERTIFICATE OF COMPLIANCE ..................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Agyin v. Razmzan*,
   986 F.3d 168, 172 (2d Cir. 2021) .................................................. 3, 8

*Agyin v. Razmzan*,
   No. 17-cv-04681 (S.D.N.Y. March 14, 2019)................................... 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................... 7

*Blumberger v. Tilley*,
   115 F.4th 1113 (9th Cir. 2024)..................................................... 1, 8

*BP P.L.C. v. Mayor and City Council of Baltimore*,
   593 U.S. 230 (2021) ......................................................................... 9

*Chuman v. Wright*,
   960 F.2d 104 (9th Cir. 1992)........................................................... 8

*CMAX, Inc. v. Hall*,
   300 F.2d 265 (9th Cir. 1962)......................................................... 10

*Dominque v. Telb*,
   831 F.2d 673 (6th Cir. 1987)........................................................... 9

*K.C. ex rel. Dunmore v. Khalifa*,
   857 F. App'x 958 (9th Cir. 2021)................................................... 11

*In re Focus Media, Inc.*,
   387 F.3d 1077 (9th Cir. 2004)....................................................... 2-3

*Friedenberg v. Lane County*,
   68 F.4th 1113 (9th Cir. 2023) ...................................................... 4, 5

*Friedenberg v. Lane County*,
   No. 18-cv-00177, 2021 WL 259950 (D. Or. Jan. 26, 2021) .............. 8

*Hegarty v. Somerset County*,
   25 F.3d 17 (1st Cir. 1994)............................................................... 9

*Hui v. Castaneda*,
   559 U.S. 799 (2010) ............................................................... 3, 5, 11

*Hunter v. Bryant*,
    502 U.S. 224 (1991) ............................................................................ 7

*Kingdom of Sweden v. Melius*,
    No. 14-cv-04492, 2015 WL 7574463 (C.D. Cal. Nov. 25, 2015) ...................... 10

*Krandle v. Refuah Health Ctr., Inc.*, No. 22-cv-4977, 2024 WL
    1075359 (S.D.N.Y. Mar. 12, 2024) ............................................................. 3

*Leiva-Perez v. Holder*,
    640 F.3d 962 (9th Cir. 2011) .................................................................. 2

*Liberty Surplus Ins. Corp. v. IMR Contractors Corp.*,
    No. 08-cv-5773, 2009 WL 1010842 (N.D. Cal. Apr. 14, 2009) ...................... 10

*Maraziti v. First Interstate Bank of Cal.*,
    953 F.2d 520 (9th Cir. 1992) .................................................................. 8

*May v. Sheahan*,
    226 F.3d 876 (7th Cir. 2000) .................................................................. 9

*McDermott v. Ampersand Pub., LLC*,
    593 F.3d 950 (9th Cir. 2010) ................................................................. 10

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985) ............................................................................ 7

*Nixon v. Fitzgerald*,
    457 U.S. 731 (1982) ......................................................................... 7-8

*Nken v. Holder*,
    556 U.S. 418 (2009) ....................................................................... 1, 2

*Saucier v. Katz*,
    533 U.S. 194 (2001) ............................................................................ 7

*Sierra Club v. Trump*,
    929 F.3d 670 (9th Cir. 2019) .................................................................. 1

*Smith v. Harbison*,
    No. 19-cv-152, 2020 WL 6216758 (M.D. Ga. Oct. 22, 2020) ...................... 11

*Stewart v. Donges*,
    915 F.2d 572 (10th Cir. 1990) ................................................................ 9

*United States v. Stanley*,
    483 U.S. 669 (1987) ............................................................................... 3

**Statutes**

28 U.S.C. § 1442(a)(1) ............................................................................ 1, 9

42 U.S.C. § 233(a) ..............................................................................*passim*

42 U.S.C. § 233(g) .................................................................................. 1, 4

42 U.S.C. § 233(g)(1) ......................................................................... 4, 5, 8

42 U.S.C. § 233(g)(4) ........................................................................*passim*

42 U.S.C. § 233(*l*)(1) ................................................................................. 1

42 U.S.C. § 233(*l*)(2) ........................................................................... 1, 11

42 U.S.C. § 254b ........................................................................................ 1

42 U.S.C. § 254b(a) ............................................................................. 7, 11

42 U.S.C. § 254b(b)(1)(A)(i)(III)(aa) ...................................................... 6

**Rules**

Fed. R. App. P. 8(a)(1) .............................................................................. 1

Fed. R. App. P. 8(a)(1)(A) ....................................................................... 2

Local Rule 7-3 ........................................................................................... 1

Local Rule 11-3.1.1 ................................................................................. 13

**Other Authorities**

141 Cong. Rec. H14273–07, 1995 WL 733808 (Dec. 12, 1995) .............. 11

Federally Supported Health Centers Assistance Act of 1992,
    60 Fed. Reg. 22530-01 (May 8, 1995) ................................................. 6

H.R. Rep. 104-398, 1995 U.S.C.C.A.N. 767 (Dec. 12, 1995) ............... 4, 5

HHS, Health Resources and Services Administration,
    Health Center Compliance Manual, Ch. 17,
    https://bphc.hrsa.gov/compliance/compliance-manual ....................... 6

HHS, Health Resources and Services Administration, Policy
    Information Notice 2008-01,
    https://bphc.hrsa.gov/sites/default/files/bphc/compliance/pin-2008-
    01.pdf ........................................................................................................... 6

PLEASE TAKE NOTICE that, on June 6, 2023 at 1:30 p.m., or as soon thereafter as they may be heard, Defendants Eisner Pediatric and Family Medical Center ("Eisner"); Ian Tilley, M.D.;  Penelope Velsaco, M.D.; Lillian Morris, M.D.; and Nathana Lurvey, M.D. (collectively, the "Eisner Defendants") will and hereby do move this Court  pursuant to Fed. R. App. P. 8(a)(1) to stay its remand order (ECF No. 87) pending appeal. This motion will be made in the First Street United States Courthouse before the Honorable Wesley L. Hsu, United States District Judge, located at 350 W. 1st Street, Los Angeles, CA 90012.

The Eisner Defendants move on the grounds that they are likely to succeed on appeal, they will suffer irreparable harm absent a stay, a stay of proceedings pending appeal will not substantially harm the United States or Plaintiffs, and the public interest favors a stay.

This motion is made on this Notice; the attached Memorandum of Points and Authorities; all pleadings, records, and other documents on file with the Court in this action; and such oral argument as may be presented.

On April 29, 2025, pursuant to Local Rule 7-3, counsel for the parties and United States conferred regarding this motion. Plaintiffs oppose this motion; the United States takes no position on it.


Dated:  May 9, 2025                    Respectfully submitted,


                                       KELLY, TROTTER & FRANZEN

                                       John C. Kelly (SBN 125609)
                                       111 West Ocean Boulevard, 14th Floor
                                       Post Office Box 22636
                                       Long Beach, California 90801-5636
                                       Tel: 562.432.5855
                                       jckelly@cktflaw.com



1

POWERS PYLES SUTTER & VERVILLE PC

s/ *Matthew S. Freedus*
Matthew Sidney Freedus (DC 475887)*
Rosie Dawn Griffin (DC 1035462)*
1250 Connecticut Ave NW, 8th Floor
Washington, DC 20036
Tel: 202.872-6739
matthew.freedus@powerslaw.com
rosie.griffin@powerslaw.com

*Admitted *pro hac vice*

*Counsel for Defendants Eisner Health (a registered trade name of Pediatric & Family Medical Center), Ian Tilley, M.D., Penelope Velasco, M.D., Lillian Morris, M.D. and Nathana Lurvey, M.D.*

**INTRODUCTION**

Defendants Eisner Health; Ian Tilley, M.D.; Nathana Lurvey, M.D.; Penelope Velasco, M.D.; and Lillian Morris, M.D. ("Eisner Defendants") move to stay the District Court's April 18, 2025 Remand Order pending the resolution of their forthcoming appeal to the Ninth Circuit. A stay is both necessary and appropriate here: the Eisner Defendants are likely to succeed on the merits of their appeal; they will be irreparably harmed if subjected to the burdens of state court litigation while their rights are determined on appeal; neither the United States nor Plaintiffs will be substantially harmed by a stay; and a stay will serve the public interest. Each of the factors required for the requested stay is thus met. *See Nken v. Holder*, 556 U.S. 418, 425–26 (2009); *accord Sierra Club v. Trump*, 929 F.3d 670, 687 (9th Cir. 2019).

**STATUTORY, FACTUAL, AND PROCEDURAL BACKGROUND**

Eisner—a community health center funded under Section 330 of the Public Health Service (PHS) Act, 42 U.S.C. § 254b *et seq.*—and its employees have been deemed by the Secretary of the United States Department of Health and Human Services (HHS) to be PHS employees for purposes of the protection afforded by the Federally Supported Health Centers Assistance Act ("FSHCAA"), *as amended and codified at* 42 U.S.C. § 233(g) *et seq*.

On June 5, 2024, to preserve and assert their federal immunity defense, the Eisner Defendants removed this action from state court pursuant to 42 U.S.C. § 233(*l*)(2) and 28 U.S.C. § 1442(a)(1). Notice of Removal ¶¶ 6–14, ECF No. 1.

On October 31, 2024, this Court denied initial remand motions of the United States and Plaintiffs, both of which asserted, *inter alia*, that this Court lacked jurisdiction because the Attorney General timely appeared in state court under 42 U.S.C. § 233(*l*)(1). ECF Nos. 13, 18. The Court rejected the arguments and retained jurisdiction, concluding, in keeping with *Blumberger v. Tilley*, 115 F.4th 1113 (9th Cir. 2024), that "the case needed to be removed—specifically by the Government—months ago." ECF No. 31 at 7.

On November 26, 2024, the United States again moved to remand, now arguing that the Eisner Defendants were not acting within the scope of their deemed PHS employment with respect to Plaintiffs' allegations. ECF No. 38. The following day (November 27), Plaintiffs too moved to remand, asserting similar arguments. ECF No. 43.

On April 18, 2025, the Court granted the United States's motion, denied Plaintiffs' motion as moot, and stayed its remand order for sixty days to permit the Eisner Defendants to move for a stay pending appeal. ECF No. 87 at 1.

## LEGAL STANDARD

A district court may grant "a stay of [its] judgment or order . . . pending appeal." Fed. R. App. P. 8(a)(1)(A). Imposing such a stay is "an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken*, 556 U.S. at 433 (internal quotation marks and citations omitted). Four factors inform the determination: (1) whether the movant is likely to succeed on the merits; (2) whether the movant will be irreparably harmed absent a stay; (3) whether a stay will substantially injure other parties; and (4) where the public interest lies. *Id.* at 434 (noting first two factors are most important). The Ninth Circuit employs a "sliding scale" approach to the assessment, in which a stronger showing on one factor may offset a weaker showing on another. *See Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (*per curiam*).

## ARGUMENT

### I.    The Eisner Defendants Are Likely To Succeed On Appeal

To justify a stay, the Eisner Defendants "need not demonstrate that it is more likely than not that they will win on the merits." *Leiva-Perez*, 640 F.3d at 966. Instead, they must merely demonstrate "'a fair chance of success.'" *In re Focus Media, Inc.*, 387 F.3d 1077, 1086 (9th Cir. 2004) (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (*en banc*)). The Eisner

2

1 | Defendants, at the very least, have "a substantial case for relief on the merits." *Leiva-*
2 | *Perez*, 640 F.3d at 968.

3 | ### A. Section 233(a) is not a waiver of sovereign immunity

4 | The Court misperceives § 233(a) as a limited waiver of sovereign immunity
5 | that must be "strictly construed in favor of the sovereign." ECF No. 87 at 8. If
6 | § 233(a) is construed broadly in favor of immunity, as it should be, there is a fair
7 | chance the Ninth Circuit will find the Eisner Defendants' conduct—medical
8 | functions within the scope of their deemed employment—as covered. *Cf. United*
9 | *States v. Stanley*, 483 U.S. 669, 684 (1987) (recognizing "the availability" of a
10 | remedy "is a question logically distinct" from the nature and scope of an individual's
11 | immunity).

12 | Section 233(a) is neither a provision of the FTCA, nor a waiver of sovereign
13 | immunity. It is, instead, a grant of absolute immunity, which confers an individual
14 | federal right to be free from the burdens of litigation altogether, regardless of the
15 | scope of the exclusive remedy (here, the FTCA). The plain language of § 233(a) is
16 | comprehensive, covering "both known and unknown causes of action" arising out
17 | of several broad functions. *See Hui v. Castaneda*, 559 U.S. 799, 806 (2010) (holding
18 | § 233(a) entitles PHS employees to "absolute immunity . . . for actions arising out
19 | of the performance of medical or related functions within the scope of their
20 | employment"); *accord Agyin v. Razmzan*, 986 F.3d 168, 172 (2d Cir. 2021).

21 | The concepts of sovereign immunity and individual immunity are logically
22 | and legally distinct: the former (which applies to a limited remedy under the FTCA)
23 | does not restrict the latter (which applies to any action arising out of the performance
24 | of "medical … and related functions"). 42 U.S.C. § 233(a); *see Krandle v. Refuah*
25 | *Health Ctr., Inc.*, No. 22-cv-4977, 2024 WL 1075359, at *7 (S.D.N.Y. Mar. 12,
26 | 2024) (noting "scope of the FTCA—and the scope of the United States' waiver—is
27 | a separate question which § 233 says nothing about") (citing *Hui*, 559 U.S. at 807).

28 | Viewed through the proper lens, the Ninth Circuit is likely to recognize that

conduct at the core of the health center program—*i.e.*, deemed PHS employees' provision of obstetrical care to a resident of a medically-underserved service area at an HHS-approved health delivery site—as within § 233(a)'s immunized conduct.

**B. Section 233(g) neither alters nor restricts § 233(a) immunity**

The Ninth Circuit may well conclude that this Court erred in applying § 233(g)(1)(B) and (C) to "limit" the scope of § 233(a) based on the "status of the individual who received treatment." ECF No. 87 at 11, 15, 17, 25 n.17 (citing, *e.g.*, § 233(g)(1)(B) for proposition that "deemed status only applies in limited situations to treatment of individuals who are not patients of the entity"). In *Friedenberg v. Lane County*, the Ninth Circuit rejected the notion that § 233(g)(1)(B) and (C) alter or restrict the scope of § 233(a) immunity. 68 F.4th 1113, 1126–27 (9th Cir. 2023) ("Nothing in § 233(g)(1)(B) limits immunity protection to a particular class of plaintiffs."). This Court's decision does not confront *Friedenberg*'s analysis of § 233(g).

Sections 233(g)(1)(B) and (C)—which did not exist under the 1992 FSHCAA—were enacted in 1995 as "clarifications" and "procedural modifications . . . to improve the efficiency of the operation of the program." H.R. Rep. 104-398, 4–5, 1995 U.S.C.C.A.N. 767, 768 (Dec. 12, 1995). The 1992 FSHCAA had no mechanism for health centers to confirm coverage of their services in advance of the period in which they intended to provide them. *See id.* at 6, 7. As a result, health centers had "uncertainty" as to whether (or which of) their services would be immunized under § 233(a), especially when such services were rendered outside the health center's own health care delivery sites, to individuals who were not previously registered as health center patients. *Id.* at 7 (coverage concerns with respect to services to individuals not registered as patients, and other procedural deficiencies, "served as disincentives for full health center participation in the program").

"Sections 233(g)(1)(B) and (C) were enacted to clear up such confusion, not to limit the protection afforded to deemed PHS employees." *Friedenberg*, 68 F.4th

at 1127 (emphasis added). By requiring health centers grantees, in a statutorily prescribed deeming application, to "detail the situations in which health center practitioners treating [registered and] nonregistered patients of the center would be covered," the 1995 FSHCAA answered the call for a service-specific confirmation of coverage. 42 U.S.C. § 233(g), (h); H.R. Rep. 104-398, 7. Together, § 233(g)(1)(B) and (C) provide that HHS's "[favorable determination] deeming . . . shall apply with respect to services provided" to patients of the health center and "to individuals who are not patients of the entity" if the deeming application demonstrates, and the Secretary agrees, that the "provision of the services to such individuals" benefits the health center's patients and its patient population, "facilitates the provision of services" to the center's patients, or is "required under an employment contract (or similar arrangement)" between the health center and "an officer, governing board member, employee, or contractor of the entity." § 233(g)(1)(B), (C).

Because the Court's decision reads § 233(g)(1)(B) and (C) to limit § 233(a) immunity to only services provided to patients and certain non-patients, ECF 87 at 11, there is a substantial chance it conflicts with *Friedenberg* and would be viewed as repealing by implication § 233(g)(1)(A)'s mandated equivalency. *See Friedenberg*, 68 F.4th at 1126 (holding "[a] plain reading of the statute" supports the conclusion that "deemed PHS employees receive protection 'to the same extent' as actual PHS employees"); *cf. Hui*, 559 U.S. at 810 ("repeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest") (quoting *Hawaii v. Office of Hawaiian Affairs*, 556 U.S. 163 (2009)).

### C. The Eisner Defendants acted within the scope of their deemed federal employment

The Court's immunity determination hinges on the premise that Ms. Burks "was *not* a patient of Defendant Eisner Health." ECF 87 at 18 (emphasis added). In the absence of a statutory or regulatory definition of a health center patient, it is entirely plausible the Ninth Circuit could reach the opposite conclusion, because Ms.

Burks accessed "required" services of Eisner-employees at an HHS-approved, grant-supported health-delivery site. 42 U.S.C. § 254b(b)(1)(A)(i)(III)(aa) (requiring "prenatal and perinatal services"); *see* HHS, Health Resources and Services Administration, Health Center Compliance Manual, Ch. 17, https://bphc.hrsa.gov/compliance/compliance-manual (activity is "grant-supported" if associated expenses and revenue are included within the center's annually submitted "total budget"); *see also* HHS, HRSA PIN 2008-01, https://bphc.hrsa.gov/sites/default/files/bphc/compliance/pin-2008-01.pdf, at 1 (defining "scope of project" as "the activities that the total approved grant-related project budget supports"), 4 (defining "service site [as] any location where a [health center] grantee, either directly or through a sub-recipient or other established arrangement, provides primary health care services to a defined service area or target population"). The notion that a "patient" refers to an individual who accesses services at a health-delivery site of a deemed health center (*i.e.*, listed on Form 5B of its grant application) and a "non-patient" refers to an individual who accesses services offsite (*i.e.*, a health-delivery site not controlled by the deemed entity) is reflected in the FSHCAA's legislative and regulatory history. *See, e.g.,* Federally Supported Health Centers Assistance Act of 1992, 60 Fed. Reg. 22530-01, 22531 (May 8, 1995) (distinguishing between onsite and "off-site" services and implying "off-site" means a site outside the health center's scope of project).

Considering the record, the Ninth Circuit could well conclude that the conduct at issue was within the scope of the Eisner Defendants' deemed federal employment. As Eisner's approved 2007 change in scope request made clear, its service area suffers higher rates of underweight births and infant deaths, and substantially higher rates of teen pregnancy, than both Los Angeles County and California as a whole, and hospital-based and emergency obstetric-gynecological services are limited. *See* ECF No. 71 at 20. The arrangement between Eisner and California Hospital is carefully tailored to, and "appropriate for," the specific needs of Eisner's service

area and patient population. 42 U.S.C. § 254b(a)(1). Moreover, Eisner's contract with California Hospital Medical Center demonstrates that Eisner exercised exclusive control and direction over the provision of obstetrical and gynecological services rendered there. ECF No. 58-3 § 4.8 ("[California] Hospital shall neither have nor exercise *any control or direction* over any [Eisner] Professional's professional medical judgment or the methods by which any [Eisner] Professional performs professional medical services . . ."); ECF No. 58-3 (2022 Agreement) § 4.13 (providing same). Finally, the services at issue were approved by HHS as within Eisner's federally-funded health center project. *Cf. Pediatric and Fam. Med. Found.*, 2021 WL 3878647, at *2 (holding HRSA's decision to remove California Hospital from Eisner's scope of project was "arbitrary and capricious"); ECF No. 147 (setting aside HRSA's July 2015 action removing the hospital from scope).

## II.    The Eisner Defendants Will Be Irreparably Harmed Absent A Stay

The Eisner Defendants will be irreparably harmed absent a stay of this Court's remand order. The order strips the Eisner Defendants of their asserted absolute immunity, which is not merely a federal defense to liability but a right to be free from the burdens of litigation altogether. *See Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) (immunity is the right to be free from "the concerns of litigation, including 'avoidance of disruptive discovery'") (citing *Siegert v. Gilley,* 500 U.S. 226, 236 (1991) (Kennedy, J., concurring in judgment)); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (absolute immunity is "an entitlement not to stand trial or face the other burdens of litigation). If forced to defend this case in state court while pursuing their appeal, the Eisner Defendants' claimed immunity will be substantially compromised, if not entirely lost, while their appeal is pending. *See Saucier v. Katz*, 533 U.S. 194, 200–01 (2001); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*) (Supreme Court has "repeatedly [] stressed the importance of resolving immunity questions at the earliest possible stage in litigation"); *see also Nixon v. Fitzgerald*, 457 U.S. 731, 742 (1982) (concluding denial of absolute immunity

7

presents "an important issue completely separate from the merits of the action" and is immediately appealable under the "collateral order doctrine") (collecting cases).

The Eisner Defendants' "final and binding" deemed federal status, § 233(g)(1)(F), entitles them to a federal forum to resolve any dispute as to their immunity, including their "challenge [to] the government's failure to certify scope of employment." *See Blumberger*, 115 F.4th at 1135 ("FSHCAA itself contemplates a federal forum for resolving any disputes over the employee's PHS status"). If deprived of the full protection of a federal forum—and forced to litigate in state court—while their appeal proceeds in the Ninth Circuit, the Eisner Defendants will lose the very immunity at the heart of that appeal. *Cf. Friedenberg v. Lane County*, 18-cv-00177-MK, 2021 WL 259950, at *2–3 (D. Or. Jan. 26, 2021) (concluding "balance of hardships strongly favors staying the remand order" pending resolution of appeal, because without a stay, the PHS defendants would be exposed "to the burdens of state court litigation, and their [asserted] right to be free from litigation will be compromised and lost to a degree."); *Agyin v. Razmzan*, No. 17-cv-04681 (S.D.N.Y. March 14, 2019), ECF No. 67 (granting deemed PHS employee's request to stay court's remand order because its execution "would be inappropriate" pending appeal).[1]

For these reasons, the Ninth Circuit has repeatedly recognized the propriety of staying all trial court proceedings pending resolution of an immunity appeal. *See, e.g., Maraziti v. First Interstate Bank of Cal.*, 953 F.2d 520, 526 (9th Cir. 1992) (citing *Harlow* in upholding protective order staying discovery pending disposition of *Bivens* defendants' immunity defense); *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992) (granting stay pending appeal of denial of qualified immunity). So too in

---

[1] In each case, the appeals court, during the stay period, reversed the district court's remand and ordered the substitution of the United States in place of each deemed defendant, over the government's objection. *See Friedenberg*, 68 F.4th at 1131–32; *Agyin*, 986 F.3d at 179. The appellate outcomes confirm the deemed PHS defendants would have been irreparably harmed absent the stay.

other Circuits. *See, e.g., May v. Sheahan*, 226 F.3d 876, 880 (7th Cir. 2000) ("[T]here can be no doubt that a *Forsyth* appeal divests a district court of the authority to order discovery or conduct other burdensome pretrial proceedings"); *Hegarty v. Somerset County*, 25 F.3d 17, 18 (1st Cir. 1994) (denial of qualified immunity means "stay of discovery, of necessity, must carry over through the *appellate court's* resolution of that question"); *Stewart v. Donges*, 915 F.2d 572, 576 (10th Cir. 1990) ("[A]n interlocutory appeal from an order refusing to dismiss on . . . qualified immunity grounds relates to the entire action and, therefore, it divests the court of jurisdiction to proceed with any part of the action against the appealing defendant"); *Dominque v. Telb*, 831 F.2d 673, 676 (6th Cir. 1987) ("Pending resolution of the qualified immunity issue on appeal, the defendant may not be subjected to further discovery").

There should be no dispute that a loss of the Eisner Defendants' suit immunity would constitute irreparable harm. A stay of the Court's Remand Order is thus necessary and appropriate to preserve the Eisner Defendants' suit immunity and afford an opportunity for meaningful appellate review. *See BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230 (2021) ("Congress has deemed it appropriate to allow appellate review *before a district court may remand a case to state court*" where, as here, it was removed pursuant to 28 U.S.C. § 1442(a)(1)) (emphasis added) (citing 28 U.S.C. § 1447(d)).

### III.  Neither Plaintiffs Nor The United States Will Be Substantially Harmed By A Stay

A stay of the Court's remand order pending appeal will not cause Plaintiffs substantial harm. The United States—which takes no position on the requested stay—will suffer no harm if the Court grants the requested stay.

Plaintiffs seek only monetary damages from the Eisner Defendants. Compl. at 21–22 (Prayer for Relief, seeking general and special damages), ECF No. 1 (Compl. at pp. 21–43)). To be sure, a stay will delay trial, and thus delay Plaintiffs' recovery of any monetary damages, but such delay does not support "a strong

showing [of] irreparable damage and a miscarriage of justice" sufficient to defeat a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268–69 (9th Cir. 1962).

Delay alone "is not a determinative factor in whether the grant of interim relief is just and proper." *See McDermott v. Ampersand Pub., LLC*, 593 F.3d 950, 965 (9th Cir. 2010) (disregarding delay caused by "litigation process itself"); *see also, e.g., Kingdom of Sweden v. Melius*, No. 14-cv-04492, 2015 WL 7574463, at *3–4 (C.D. Cal. Nov. 25, 2015) ("[D]elay in the recovery of monetary damages is not sufficient to warrant the denial of a stay."); *Liberty Surplus Ins. Corp. v. IMR Contractors Corp.*, No. 08-cv-5773, 2009 WL 1010842, at *4 (N.D. Cal. Apr. 14, 2009) (holding "delay in recovering potential monetary damages was not sufficient harm to warrant a stay."). Indeed, a stay would provide some *benefit* to Plaintiffs: if the Eisner Defendants prevail in their § 233(a) immunity appeal—and the United States is substituted as the only proper defendant in their place—a stay would spare Plaintiffs substantial time and resources proceeding against the wrong party in the wrong forum. Should the Ninth Circuit instead affirm this Court's decision, Plaintiffs will be free to proceed in state court.

As to the United States, it is not a party in state court, and the Eisner Defendants plan to prosecute an appeal whether the remand order is stayed or the case is remanded. The United States will have to litigate this appeal (or choose not to litigate) regardless of whether this Court stays its remand order.

## IV.    The Public Interest Favors A Stay

The public interest favors a stay.

First, the public interest is not served by an order that results in this case proceeding in state court while an appeal is pending. Permitting the case to proceed simultaneously in two different forums will needlessly consume judicial resources and impose significant—and avoidable—time and financial burdens on the parties.

Second, a stay will permit the Ninth Circuit to resolve substantial and recurring question as to the scope of absolute immunity available to deemed and

actual PHS employees under 42 U.S.C. § 233(a). Congress, via FSHCAA, provided an immunity right to participants in a nationwide federal program designed to facilitate the provision of safety-net health care services to the underserved. *See* 42 U.S.C. § 254b(a), 233(g)(4); 141 Cong. Rec. H14273–07, 1995 WL 733808 (daily ed. Dec. 12, 1995) (extending 233(a) immunity to health center grantees allows them "to reallocate desperately needed health care dollars from the coffers of private medical malpractice insurance companies to direct services for hundreds of thousands more poor and rural Americans") (statement of Rep. Wyden). The need for uniformity in the program's rules is readily apparent. In the absence of a stay, the state court may resolve this case or issue another order, or the expense of litigation might induce the parties to act in such a way that would render this case moot. *Cf. K.C. ex rel. Dunmore v. Khalifa*, 857 F. App'x 958, 958 (9th Cir. 2021) ("this case has settled in state court and the claims against [Defendant] have been dismissed with prejudice, so [Defendant's] appeal is now moot"). This would prevent the Ninth Circuit from resolving this important question and potentially subject an immune defendant to liability.

Finally, as Congress determined nearly thirty years ago, the public interest lies in evaluating any assertion of § 233(a) immunity through a statutorily mandated hearing in federal court. While that determination is made, the statute commands that the case "shall be stayed . . ." 42 U.S.C. § 233(*l*)(2); *Hui*, 559 U.S. at 881; *see also*; *Smith v. Harbison*, No. 19-cv-152-CDL, 2020 WL 6216758, at *5 (M.D. Ga. Oct. 22, 2020). There is no reason to conclude that the mandatory stay should not extend to the full resolution of the Eisner Defendants' immunity defense.

## CONCLUSION

For the foregoing reasons, this Court should stay its April 18, 2025 remand order pending resolution of the Eisner Defendants' forthcoming appeal to the United States Court of Appeals for the Ninth Circuit.

Dated:  May 9, 2025

Respectfully submitted,

KELLY, TROTTER & FRANZEN

John C. Kelly (SBN 125609)
111 West Ocean Boulevard, 14th Floor
Post Office Box 22636
Long Beach, California 90801-5636
Tel: 562.432.5855
jckelly@cktflaw.com


POWERS PYLES SUTTER & VERVILLE PC

/s/ *Matthew S. Freedus*
Matthew Sidney Freedus (DC 475887)*
Rosie Dawn Griffin (DC 1035462)*
1250 Connecticut Ave NW, 8th Floor
Washington, DC 20036
Tel: 202.872.6739
matthew.freedus@powerslaw.com
rosie.griffin@powerslaw.com

*Admitted *pro hac vice*

*Counsel for Defendants Eisner Health (a registered trade name of Pediatric & Family Medical Center), Ian Tilley, M.D., Penelope Velasco, M.D., Lillian Morris, M.D. and Nathana Lurvey, M.D.*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for the Eisner Defendants certifies that this brief contains 3749 words—excluding the caption, the table of contents, the table of authorities, the signature block, certificate of compliance, and attachments—which complies with the page limit of Section G.4. of the Court's Standing Order for Newly Assigned Civil Cases.

Undersigned counsel also certifies that this brief uses 14-point Times New Roman font in compliance with Local Rule 11-3.1.1 and Section G.4. of the Court's Standing Order.

/s/ *Matthew S. Freedus*
Matthew S. Freedus